IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    PLAINTIFF,<br><br>    *v.*<br><br>$32,420.00 IN UNITED STATES CURRENCY,<br>    DEFENDANT. | Civil Action No.  2:23-CV-013-RWS |

## VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff United States of America, by Ryan T. Buchanan, United States Attorney, and Radka T. Nations, Assistant United States Attorney for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

### NATURE OF THE ACTION

1. This is a civil forfeiture action against $32,420.00 in United States currency ("Defendant Currency") that agents with the United States Drug Enforcement Administration ("DEA") seized from Torrance Nicely during a traffic stop at the QuikTrip store located at 3446 Mundy Mill Road in Gainesville, Georgia.

2. The Defendant currency is presently being held in a government

account maintained by the United States Marshals Service.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345 and 1355.

4. This Court has *in rem* jurisdiction over the Defendant Currency pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district and pursuant to Title 28, United States Code, Section 1395 because the Defendant Currency is located in this district.

## BASIS FOR FORFEITURE
### Relevant Statutes

6. The Defendant Currency is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance, that it constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title 21, United States Code, Section 841.

7. The Defendant Currency is also subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) on the grounds that it constitutes or

2

was derived from proceeds traceable to a violation of a "specified unlawful activity."

8. Title 18, United States Code, Section 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any activity constituting an offense listed in Title 18, United States Code, Section 1961(1).

9. Title 18, United States Code, Section 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

## FACTUAL BACKGROUND

### A.   Traffic Stop

10. On August 21, 2022, at approximately 2:47 a.m., Georgia State Patrol Trooper D. Kraeling was on routine patrol on Atlanta Highway in Gainesville, Hall County, Georgia, within the Northern District of Georgia.

11. Trooper Kraeling observed a silver Ford Expedition failing to stop properly at a traffic light located in the intersection of Atlanta Highway and Mundy Mill Road.

12. Specifically, as the traffic light turned red, the vehicle continued to move forward and did not come to a full stop until it was approximately fifty feet in front of the stop bar and was partially in the intersection.

13. Trooper Kraeling activated his patrol vehicle's emergency equipment

and initiated a traffic stop.

14. The driver of the Ford pulled into the parking lot of the QuikTrip gas station off of Mundy Mill Road and began to drive around the pumps. The driver then stopped at an unusual angle instead of parking in one of the parking spots.

15. Trooper Kraeling approached the vehicle and asked the driver for his driver's license.

16. Trooper Kraeling noticed that the driver was nervous, fumbling through things in his car looking for a cigarette.

17. As the driver was looking for his driver's license in a bag in the front seat of the car, he pulled out some plastic bags containing several little rubber bands.

18. From his training and experience, Trooper Kraeling knew that small rubber bands were commonly used by drug traffickers to bundle currency.

19. Trooper Kraeling asked the driver why he had the rubber bands.

20. The driver stated that he used them to tie his hair. He then showed Trooper Kraeling the back of his head and his braids.

21. Trooper Kraeling noticed that the rubber bands on the driver's hair did not match the ones that had fallen out of his bag.

22. The driver provided his license to Trooper Kraeling, which identified

him as Torrance Nicely.

23. Trooper Kraeling asked Nicely whether his address was still the same as the one on his driver's license and Nicely confirmed that it was.

24. Unprompted by any questioning, Nicely started to explain that he spent about $150 to drive to a club in Atlanta to watch a friend in a rap battle. He stated that he missed the rap battle and so he turned around and drove home but needed some gas.

25. Meanwhile, Georgia State Patrol Trooper Smith arrived at the scene of the traffic stop to assist Trooper Kraeling.

26. Trooper Smith checked the status of Nicely's driver's license while Trooper Kraeling continued speaking to Nicely.

27. After hearing Nicely's story, Trooper Kraeling became suspicious that Nicely may be involved in some sort of criminal activity.

28. Trooper Kraeling asked Nicely if he had any drugs inside the car and Nicely stated that he did not.

29. Trooper Kraeling asked Nicely if he had large amounts of money in the vehicle and Nicely told Trooper Kraeling that he had a little bit.

30. Trooper Kraeling asked Nicely how much was "a little bit" and Nicely stated that he had a couple thousand dollars.

31. Nicely told Trooper Kraeling that he received a settlement from his former employer for being injured on the job.

32. Trooper Kraeling asked Nicely if he would consent to a search of the Ford.

33. Nicely declined.

34. Nicely told Trooper Kraeling that he would just like to have his ticket and leave.

35. In the meantime, Trooper Smith noticed an issue with the tires on the Ford. Specifically, the tires looked bald/slick or had no tread on them.

36. While Trooper Smith was talking to Nicely about the tires, Trooper Kraeling contacted the Police Department in Lawrenceville, Georgia and requested the assistance of a drug enforcement officer.

37. While waiting for the drug enforcement officer, Trooper Kraeling verified the vehicle's registration and insurance.

38. Officer John D. Heart from the Lawrenceville Police Department responded to Trooper Kraeling's request for a drug detection dog and arrived at the scene of the traffic stop with his drug detection dog, Mahx.

39. Mahx is a K-9 certified to detect the odors of cocaine, heroin, and methamphetamine.

40. Officer Heart walked Mahx around the Ford so Mahx could conduct an open-air sniff of the vehicle.

41. In the meantime, Trooper Kraeling wrote Nicely a warning for his traffic violation for failing to stop at a red light and for the slick tires.

42. Mahx gave a positive alert to the odor of illegal narcotics in the vehicle.

43. Based upon the positive altert, Trooper Kraeling began to search the vehicle and located the bag that Nicely had opened earlier.

44. Trooper Kraeling opened the bag and found a large block of bulk currency inside the bag.

45. Trooper Kraeling observed that the currency was bound by the same type of rubber bands that had fallen out of Nicely's bag earlier.

46. Trooper Kraeling also found a small plastic baggie that contained approximately 1-2 grams of white powdery substance inside the bag.

47. The white powdery substance was consistent with the appearance of cocaine.

48. Trooper Kraeling arrested Nicely for possession of cocaine.

### B. Defendant's Background

49. Georgia Department of Labor records revealed that Nicely was not

employed in 2022. Additionally, there were no Georgia Department of Labor employment records for the first three quarters of 2021.

### C. Administrative Proceedings

50. DEA adopted the seizure on August 21, 2022, and initiated administrative forfeiture proceedings.

51. On or about October 24, 2022, Nicely filed a claim to the Defendant Currency with the DEA.

52. Pursuant to Title 18, United States Code, Section 983(a)(3), the DEA referred the matter for judicial forfeiture to the United States Attorney's Office for the Northern District of Georgia.

## **CONCLUSION**

53. Based on the forgoing, the Defendant Currency is subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6) on the grounds that it was furnished or was intended to be furnished in exchange for a controlled substance, that it constitutes proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the possession of a controlled substance in violation of Title 21, United States Code, Section 841.

54. The Defendant Currency is also subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), because it

constitutes or was derived from proceeds traceable to a specified unlawful activity, namely the illegal distribution of controlled substances.

WHEREFORE, the United States prays:

(1) that the Court forfeit the Defendant Currency to the United States of America;

(2) that the Court award Plaintiff the costs of this action; and

(3) that Plaintiff have such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

This 17th day of January 2023.

Respectfully submitted,

RYAN K. BUCHANAN
   *United States Attorney*
   600 U.S. Courthouse
   75 Ted Turner Drive SW
   Atlanta, GA 30303
   (404) 581-6000   fax (404) 581-6181

/s/RADKA T. NATIONS
   *Assistant United States Attorney*
   Georgia Bar No. 618248
   Radka.Nations2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    PLAINTIFF,<br><br>    v.<br><br>$32,420.00 IN UNITED STATES CURRENCY,<br>    DEFENDANT. | Civil Action No. |

## **VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Robert Cunningham, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 17th day of January 2023.

_____
ROBERT CUNNINGHAM
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION